UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

MICHAEL A. BLIZZARD,

        Plaintiff,

v.                                                                              4:10cv5

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,

        Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Michael A. Blizzard ("Blizzard or "plaintiff") brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title XVI of the Social Security Act. By order filed April 13, 2010, this action was referred to a United States Magistrate Judge for a Report and Recommendation pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the decision of the Commissioner be affirmed.

## I. PROCEDURAL BACKGROUND

On August 1, 2006, Blizzard filed applications for SSI and DIB, alleging that he had

1

been disabled since June 16, 2006, due to back pain and problems with his hands[1]. (R. 100 – 07, 131).[2] The Commissioner denied his application initially (R. 59), and upon reconsideration, (R. 66 - 68 ). Blizzard requested an administrative hearing, (R. 71), which was conducted February 4, 2009. (R. 19 – 36).

On March 27, 2009, Administrative Law Judge ("ALJ") Alfred J. Costanzo concluded that plaintiff was not disabled within the meaning of the Social Security Act, and denied his claim for SSI and DIB. (R. 11 – 18). Blizzard requested review by the Appeals Council which denied review on November 5, 2009, (R. 1 - 3), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. § 1383(c)(3), on January 5, 2010, Blizzard filed this action seeking judicial review of the Commissioner's final decision. On May 19, 2010, Blizzard filed a Motion for Judgment on the pleadings which the Commissioner opposed on May 24, 2010. The parties both filed cross motions for summary judgment. This case is now before the Court to resolve the pending motions.

## II. FACTUAL BACKGROUND

Blizzard previously worked as a pipe fitter and, more recently, a security guard. (R. 25, 132). He finished high school (R. 23), and was forty-four years old on the date of the hearing (R. 100).

In his initial application for disability, Blizzard claimed he could not work due to back pain, muscle spasms, and an inability to close his hands. (R. 131, 139). After the initial denial, but before

---

[1]Blizzard previously filed applications for DIB and SSI in July, 2003. Those applications were denied at all levels of the administrative review process, which was concluded in 2006. Blizzard did not seek judicial review of that denial.

[2]"R." refers to the Administrative Record.

the administrative hearing, Blizzard also alleged that he was depressed as a result of financial stress. (R. 161).

With regard to his back pain, Blizzard treated with Dr. David Lorenzo, M.D. beginning in July, 2006 and continuing through December, 2008. (R. 230-35, 256-61, 277-88). On July 23, 2007, Dr. Lorenzo examined Blizzard and found him "oriented x3, ambulatory with a cane and not in any distress." He also noted "tenderness of the LS spine," and a positive straight leg raising test on both sides, (R. 231).[3] Dr. Lorenzo ordered x-rays, and directed Blizzard to continue on his current medications.

On the same day, Dr. Lorenzo completed an assessment of Blizzard's Residual Functional Capacity. He opined that Blizzard had chronic low back pain that interfered with his concentration "constantly". (R. 258). He stated that Blizzard could only walk one block without rest; could sit, stand or walk a total of only two hours in an eight hour day; would need unscheduled breaks of 15 minutes every two hours; and would likely miss more than four days per month as a result of his impairment. He also found Blizzard could frequently lift less than 10 pounds, occasionally lift 10 to 20 pounds, but never 50 pounds. (R. 259-60). When asked to identify the clinical findings, lab and test results supporting his opinions, Dr. Lorenzo specified "tender LS spine" and an elevated LDL cholesterol. (R. 256).

Dr. Lorenzo continued treating Blizzard, and on January 4, 2008, referred him for a neurological consult as a result of his back pain. On that date, Blizzard again had "tenderness in the

---

[3]Blizzard had seen Dr. Lorenzo on July 20, 2006, September 6, 2006, January 2, 2007, and May 8, 2007. During each of these visits Dr. Lorenzo's objective findings were limited to the same three observations – a tender LS spine (3 visits), walks with a cane (3 visits), and straight leg raising test (1 positive, 1 negative). (R. 232-235).

low back area", but a negative straight leg raising test on both sides. (R. 278). Before his neurological consult, Blizzard returned to Dr. Lorenzo on April 4, 2008. Again, he noted tenderness and a negative straight leg raising test. (R. 288).

On June 4, 2008, Blizzard saw Anne Tapscot, N.P., a nurse practitioner at MCV Hospital, for the neurological consult requested by Dr. Lorenzo. His physical exam on that date revealed a full range of motion in all joints, no swelling or tenderness, a normal gait, negative straight leg raising tests, and 5/5 strength. (R. 284). Nurse Practitioner Tapscot ordered an MRI to rule out a surgical lesion, but the MRI was not performed until August. On August 13, 2008, Tapscot saw Blizzard a second time to review the MRI. Her notes reflect the MRI showed that Blizzard's discs "all looked healthy, with no herniation, no canal stenosis at any level, . . . [a] normal study." She recommended physical therapy, but noted no need for further neurological follow up. (R. 280).

In connection with Blizzard's application for benefits, on October 4, 2006, Dr. Leopold Moreno, a physician engaged by the Department, reviewed his medical records. Dr. Moreno found that Blizzard's back pain, while limiting, was not disabling. He found Blizzard was capable of a full range of medium work. (R. 191). Similarly, Dr. Michael Cole evaluated the records on February 23, 2007, and found Blizzard limited, but capable of a full range of light work. Dr. Cole noted that Blizzard had a positive straight leg raising test at a January, 2007 office visit, and therefore modified Dr. Moreno's assessment, concluding that Blizzard was capable of light work. (R. 215).

Prior to his administrative hearing, Blizzard also received treatment for depression related to his back pain and financial stress. On December 28, 2006, William Yelverton, a Social Worker with the Community Services Board, performed an initial assessment. Yelverton's notes reflect that Blizzard presented as depressed, secondary to his pain. He found that Blizzard appeared depressed

4

and at times anxious. He recommended both medical management and individual therapy, and Blizzard elected to proceed with medical management and defer individual therapy. (R. 249-50). His mental status evaluation recorded that Blizzard had a depressed affect, and a sad and anxious mood, as well as poor concentration. However, productivity, continuity, orientation, perception and speech were all within normal limits. In addition, his judgment, reason, insight and impulse control were deemed fair. (R. 254). Mr. Yelverton assessed a GAF score of 57, which corresponds to moderate symptoms.

Blizzard next consulted with Dr. Mukesh Shah, M.D. on February 2, 2007, for a psychiatric evaluation. (R. 205-07). At that time, Dr. Shah found him alert and "oriented x 3." He noted that Blizzard ambulated with a cane "but did not appear to be using it much." (R. 206). His speech was coherent and relevant with adequate eye contact. His mood was sad and his affect restricted, but he appeared to be of average intelligence with intact memory of remote and recent events. (R. 206). He had adequate concentration, normal insight and judgment. Dr. Shah assessed him with a GAF score of 58, and a diagnosis of depressive disorder, not otherwise specified ("NOS"). (R. 206). On April 9, 2007, Dr. Shah saw Blizzard again. At that time he also noted that Blizzard was alert and oriented, appropriately dressed and groomed with adequate eye contact and relevant, coherent speech. He again noted a sad mood and restricted affect, but some insight and fair judgment. He began treating Blizzard with an antidepressant, Elavil, and scheduled a return appointment in four weeks.

The next medical records reflect that Blizzard saw Dr. Shah on July 6, 2007. He reported that he continued to be depressed "mostly due to his financial concerns". He described feeling sad all the time and difficulty maintaining sleep, but denied any side effects from the Elavil. His mental

5

status exam revealed that he was not in any physical discomfort or distress with a neat appearance, adequate eye contact, relevant speech, but a depressed mood and restricted affect. Dr. Shah proposed to increase his dosage of Elavil and scheduled another follow up in four weeks. On August 3, 2007, Blizzard reported some improvement, describing his mood as "okay". He continued on his current dose of Elavil and was directed to schedule a follow up in two months. On December 7, 2007, Dr. Shah again saw Blizzard who reported his mood was okay despite having been without medication for a few weeks as a result of a missed appointment. Dr. Shah continued the current dose of Elavil and directed another follow up appointment in three months. Dr. Shah's treatment notes from December, 2007 represent the last evidence in the medical record concerning Blizzard's claimed mental impairments.

In addition to treating with Dr. Shah, Blizzard was evaluated by David Deaver, PhD, a disability specialist with the state agency. (R. 216-229). He completed a psychiatric review technique form and reviewed Blizzard's medical records. Dr. Deaver found Blizzard's statements about his medical condition not credible. (R. 228). Based on his review of the records Dr. Deaver concluded that Blizzard suffered no functional limitations in his activities of daily living; maintaining social functioning; maintaining concentration; persistence or pace; and no episodes of decomposition. (R. 226). He concluded Blizzard's mental impairment was non-severe. (R. 216).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. §§ 1382(a) and (b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. §§ 1381(a) and 1382(c).

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

7

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.   ALJ's Decision

In the present case, the ALJ made the following findings under the five-part analysis: (1) The ALJ found that Blizzard had not engaged in substantial gainful activity since June 16, 2006 (the alleged onset date of disability); (2) Blizzard had a severe impairment of low back pain, but his alleged mental impairment of depression was non-severe; (3) his impairment (or combination of impairments) did not meet one of the listed impairments in Appendix 1; (4) Blizzard had the RFC to perform the full range of light work, including his past relevant work as a security guard. Because the ALJ concluded Blizzard could perform past relevant work, it was not necessary to evaluate other jobs in the national economy which plaintiff could perform. (R. 11-18).

Blizzard first filed a Motion for Judgment on the Pleadings, claiming the Commissioner's Answer reversed the burden of proof. According to this argument, the Commissioner's filing

requires the Court to reverse the ALJ's decision as it is not supported by substantial evidence under the supposedly reversed burden of proof. In his motion for summary judgment, Blizzard alleges that the ALJ failed to properly evaluate and give appropriate weight to the opinion of Blizzard's treating physician, Dr. David Lorenzo. He also argues that the ALJ's finding that Blizzard's depression is not a severe impairment is not supported by substantial evidence. Finally, he claims the ALJ erred in finding Blizzard only partially credible and discounting Blizzard's descriptions of his low back pain, and its effect on his activities of daily living. The Court will address each of these arguments.

**B.     The Commissioner did not reverse the burden of proof and Blizzard's Motion for Judgment on the Pleadings alleges no other basis for relief.**

A motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) is appropriate when there are no genuine issues of material fact, and "only questions of law remain." Virginia Imports, Inc. v. Kirin Brewery of America, LLC, 296 F. Supp. 2d 691, 695 (E.D. Va. 2003). Blizzard's motion claims that the Commissioner's pleadings in this case have reversed the burden of proof. He argues that the Commissioner has the burden to prove that Blizzard is <u>not</u> disabled rather than the other way around. He bases this claim on the Commissioner's "denial" of paragraph 36 of the Complaint which alleged—correctly—that Blizzard had the burden to prove he <u>was</u> disabled. Because the Commissioner supposedly "denied" this claim, Blizzard argues that his pleading reversed the burden of proof and the Court must therefore reverse the ALJ's decision.

The Court disagrees. Factual admissions by parties are, as a general rule, binding as judicial admissions. See New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 24-25 (4th Cir. 1963). Here, however, the Commissioner did not make any admission, and the admission alleged involves a conclusion of law not an allegation of fact.

The claim at issue involves paragraph 36 of the Complaint, which was incorrectly numbered paragraph 38. It states: "Throughout this process, the claimant bears the burden of proving she is disabled." (Doc. 1 at ¶ 38). The Commissioner's "denial" reads as follows: "Paragraph 36 of plaintiff's complaint . . . states a legal conclusion to which no responsive pleading is required. To the extent that the court deems a responsive pleading is necessary, defendant denies paragraph 36." (Doc. #4 at ¶ 10).

Under Federal Rule of Civil Procedure 8(b)(1) the scope of required responses is limited to "allegations." Because the burden of proof issue raised in paragraph 36 of Blizzard's Complaint alleged no fact, it is therefore outside of the scope of the responsive pleadings required by Fed. R. Civ. P. 8(b)(1). As the Rules do not mandate a response, unless the Court "deems a responsive pleading is necessary," no response was required and the condition in the Commissioner's Answer remains unmet. Thus the Commissioner did not "deny" the allocation of burden, and therefore the alleged denial is no basis for a Judgment on the Pleadings.

Even if the contents of Commissioner's Answer in paragraph 10 could be construed as "denying" that Blizzard had the burden of proof, there is still no basis to grant a motion for Judgment on the Pleadings. The binding effect of admissions does not extend to admissions on issues of law, which are not binding on either the court or the party making them. See New Amsterdam, 323 F.2d at 24-25; Meyer v. Berkshire Life Ins. Co., 372 F.2d 261, 264-65 (4th Cir. 2004) (distinguishing mere opinions and legal contentions from "judicial admissions" which result from "intentional unambiguous waivers that release the opposing party from its burden to prove facts necessary to establish the waived conclusion of law"). The allocation of the burden of proof is a question of law. Fuji Kogyo Co. v. Pac. Bay Int'l, Inc., 461 F.3d 675, 681 (6th Cir.2006); Paese v. Hartford Life and

Accident Ins. Co., 449 F.3d 435, 441 (2d Cir. 2006). As a result, absent an intentional waiver, that admission would not bind the Court or the Commissioner, and therefore would not resolve any material issue of fact which could form the basis for a motion for Judgment on the Pleadings. Because there has been no admission, and the admission alleged would not resolve any issue of material fact, the undersigned recommends that Blizzard's Motion for Judgment on the Pleadings be DENIED.[4]

### C. The ALJ adequately explained the weight he assigned to medical opinions.

In his Motion for Summary Judgment, Blizzard first challenges the ALJ's analysis of the medical evidence. The ALJ found that Blizzard had the RFC to perform a full range of light work including his past light work as a security guard. In making the RFC determination, the ALJ must consider the objective medical evidence in the record, including the medical opinions of the treating physicians and the non-examining medical consultants. Generally, the opinion of a treating physician is accorded more weight than that of a non-examining consultant. 20 C.F.R. § 416.927(d)(1). Under the federal regulations and Fourth Circuit caselaw, a treating physician's opinion merits "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. at §§ 416.927(d)(2) and 1527(d)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. When the evidence is such that

---

[4]Blizzard also argues that the substantial evidence standard of review does not apply based on the Commissioner's admission. Because the Court finds that there has been no admission which is binding upon either the parties or the Court, the substantial evidence standard of review still applies. Blizzard's contrary argument, that a de novo standard applies, unsupported by citations, is also incorrect.

reasonable minds could differ as to whether a claimant is disabled, the ALJ, and ultimately the Commissioner, must resolve any inconsistencies in the evidence. Johnson v. Barnhart, 434 F. 3d 650, 653 (4th Cir. 2005).

Blizzard claims the ALJ did not give appropriate weight to the opinion of Dr. Lorenzo, whose records provided the principal evidence of Blizzard's low back pain diagnosis and treatment. The ALJ reviewed Dr. Lorenzo's treatment records in detail. He noted that Dr. Lorenzo's observations, as reflected in his notes, showed a greater capacity for work than Dr. Lorenzo's 2007 RFC assessment. (R. 16). In particular, he observed that Dr. Lorenzo's later examinations reflected negative straight leg raising tests, and the only relevant objective symptom he recorded was tenderness in the lumbar spine. The ALJ also reviewed Blizzard's consultative exam and MRI at MCV Hospital, all of which revealed normal results, including negative straight leg raising tests, 5/5 strength and a full range of motion. These tests were performed on referral by Dr. Lorenzo and not by Agency physicians. The ALJ found this objective evidence inconsistent with any claim that Blizzard was totally disabled. As a result, the ALJ afforded any opinion by Dr. Lorenzo that Blizzard was capable of less than sedentary work "little weight".[5]

Because Dr. Lorenzo is a treating physician whose opinion was not entitled to controlling weight, the ALJ was required to provide specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record to make clear to subsequent reviewers the weight given to the treating source's medical opinion and the reasons for that weight. SSR 96-

---

[5] It is not clear to the Court that Dr. Lorenzo's RFC assessment would have precluded Blizzard from performing his past relevant work. Because the ALJ adequately addressed the weight assigned to Dr. Lorenzo's limitations, and his assessment of Blizzard's RFC is otherwise supported by substantial evidence, it is not necessary to analyze these limitations in detail.

13

2P, 1996 WL 374188, at *5 (S.S.A.). Here, the ALJ properly evaluated Dr. Lorenzo's opinion and provided detailed reasons for his assessment, and the Court finds no error in that assessment.

D. **Substantial evidence contained in the record as a whole supports the ALJ's finding that Blizzard's mental impairments were non-severe.**

Blizzard next challenges the ALJ's finding that his mental impairment of depression was non-severe. When evaluating the severity of a mental impairment, the Social Security regulations prescribe special techniques. 20 C.F.R. § 404.1520A(a). If the claimant has a medically determinable mental impairment, the ALJ must "rate the degree of functional limitation resulting from the impairment in four broad functional areas. These four areas include (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decomposition." Id. The ALJ uses ratings of the degree of functional limitation in these areas to determine the severity of the mental impairment. If the first three functional areas are assigned a rating of "none" or "mild" and there is no evidence of decomposition, the mental impairment will generally be considered not severe. Id.

Because Blizzard had a medically determinable mental impairment of depression, the ALJ applied the special technique required by the regulations and rated his impairment in each of the four functional areas. Based on the records he found no evidence of decomposition in the fourth area, and "no more than 'mild' limitation" in activities of daily living, social functioning, concentration, and persistence or pace. (R. 14).

In addition, the ALJ noted that Blizzard appeared to benefit from medication prescribed by Dr. Shah. According to Dr. Shah's treatment notes, Blizzard described his mood as "okay" several months after beginning treatment, even after a period where he was off medication as a result of a

missed appointment. Under these circumstances the ALJ properly found that Blizzard's depression was not severe, and his decision is supported by substantial evidence.

E.  **The ALJ properly evaluated Blizzard's statements concerning the subjective pain he felt.**

At the hearing, Blizzard testified in detail concerning his back pain and the degree to which it limited his activity. To determine whether Blizzard was disabled, the ALJ had to consider all of his symptoms, including his pain, and the extent to which those symptoms could reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 416.929(a). Blizzard's statements about his pain, however, are not enough to establish disability. Id. Under both federal regulations and Fourth Circuit precedent, determining whether a person is disabled by pain or other symptoms is a two-step process. First, the claimant must satisfy a threshold obligation of showing, by objective medical evidence, a medical impairment reasonably likely to cause the symptoms he claims. 20 C.F.R. § 416.929(b); Craig, 76 F.3d at 594 and 595.

After the claimant has satisfied the first step, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and the extent to which they affect the claimant's ability to work. 20 C.F.R. § 416.929(c)(1). In doing so, the ALJ must consider "all the available evidence," including: (1) the claimant's history, including the claimant's own statements, id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," id. at § 416.929(c)(2); and (3) other evidence submitted by the claimant relevant to the severity of the impairment such as evidence of daily

activities, medical treatments and medications, and descriptions of the pain or other symptoms, id. at § 416.929(c)(3).

Here, the ALJ followed the two-step inquiry set forth in the regulations and adopted by the Fourth Circuit. As to the first step, the ALJ found that Blizzard's "medically determinable impairment could reasonably be expected to produce of the alleged symptoms." (R. 15 – 16). With regard to the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the opinion's finding that Blizzard retained the RFC to perform a full range of light work. (R. 16).

In making this finding, the ALJ considered all of the available evidence. He noted that Dr. Lorenzo's later examinations showed Blizzard no longer had positive straight leg raising tests. He observed that Blizzard's use of a cane had not been prescribed by a physician, and noted that the objective findings in the medical records were limited to spinal tenderness. (R. 16). He also found that Blizzard's only detailed physical exam and MRI – in connection with his neurological evaluation – revealed essentially normal findings with a normal range of motion and normal gait. (R. 16). In short, the ALJ found that the record did not support pain and limitations of work-disabling proportions. After reviewing the record, the undersigned finds that the ALJ complied with both the regulations and Fourth Circuit precedent in evaluating claimant's subjective complaints of pain, and supported his decision with substantial evidence.

To the extent Blizzard contends that the ALJ erred in evaluating his credibility, the Court must defer to the ALJ's credibility findings. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the

reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). The Court must accept the ALJ's credibility determination unless it "is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). Here, the ALJ performed the required analysis and articulated a sound basis for not fully crediting Blizzard's description of his symptoms. There are no exceptional circumstances which would warrant disregarding the ALJ's assessment of credibility determination. Accordingly, the Court finds the ALJ properly evaluated Blizzard's credibility.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that Blizzard's motion for judgment on the pleadings be DENIED, that the Commissioner's motion for summary judgment be GRANTED, Blizzard's motion for summary judgment be DENIED, and that the final decision of the Commissioner be AFFIRMED.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

September 22, 2010

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Blythe Ann Scott
Robert Wayne Gillikin, II
Rutter Mills LLP
160 W. Brambleton Avenue
Norfolk, VA 23510

Mark Anthony Exley
United States Attorney Office
101 W. Main Street, Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

_____
Deputy Clerk

_____, 2010